J. BENNETT FRIEDMAN, ESQ., SBN 147056
    *jfriedman@flg-law.com*
MICHAEL SOBKOWIAK, ESQ., SBN 242718
    *msobkowiak@flg-law.com*

**FRIEDMAN LAW GROUP, P.C.**
1900 Avenue of the Stars, 11th Fl.
Los Angeles, California 90067
Telephone: (310) 552-8210
Facsimile: (310) 733-5442

Attorneys for Plaintiff CKR Law, LLP

# UNITED STATES BANKRUPTCY COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | LEAD CASE NO.: 2:17-bk-12392-BR |
| **MARK ELIAS CRONE,** | ADV. CASE NO.: |
| Debtor. | Chapter 7 |
| | **COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF A DEBT PURSUANT TO SECTION 523 OF THE BANKRUPTCY CODE** |
| **CKR LAW, LLP,** | |
| Plaintiff, | |
| vs. | |
| **MARK ELIAS CRONE,** | |
| Defendant. | |

Plaintiff-Creditor CKR Law, LLP ("CKR Law," or "Plaintiff") submits and files this Complaint against Defendant-Debtor Mark Elias Crone ("Crone," or "Defendant"), and respectfully alleges as follows:

1

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF A DEBT

## I.

## INTRODUCTION

1.  This adversary proceeding (the "Adversary") arises from damages that Plaintiff has sustained, and continues to sustain, by virtue of, inter alia, Defendant's material misrepresentations of fact upon which Plaintiff reasonably relied. As a result of, inter alia, Defendant's material failures to disclose facts (which, Defendant later acknowledged, he had failed to disclose for fear that he would not be welcomed into joining the Plaintiff law firm), Plaintiff was induced to extend to Defendant loans totaling $320,000 by false pretenses and failing to disclose material information. Furthermore, Defendant has, unlawfully, personally collected and retained fees due to Plaintiff; wrongfully converted amounts to be paid to an escrow account for Plaintiff's benefit; stolen Plaintiff's corporate property; and maliciously breached his fiduciary duties owed to Plaintiff by wrongfully taking a stock certificate held by Plaintiff in trust for another, representing shares of then-restricted stock with a present fair market value of approximately $1,000,000 in which Plaintiff holds a beneficial interest, as the proceeds from the sale of such stock were and are to be used, in part, to satisfy obligations owing to Plaintiff.

## II.

## JURISDICTION, VENUE AND NATURE OF MATTER

2.  Plaintiff seeks a determination and declaration finding that the debt owed to it by the Debtor is non-dischargeable under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code.[1]

3.  Venue is proper in this judicial district under 28 U.S.C. § 1409 as this Adversary is a proceeding arising in, arising under, and/or related to the bankruptcy case styled *In re Mark Elias Crone*, Case No. 2:17-bk-12392-BR (the "Case"), a case under chapter 7 of the Bankruptcy Code, and which is pending in the United States Bankruptcy Court for the Central District of

---

[1] 11 U.S.C. § 101 *et seq.*

2

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF A DEBT

California (the "Court," or the "Bankruptcy Court").

4. The Bankruptcy Court has jurisdiction over this Adversary pursuant to 28 U.S.C. §§ 151, 157 and 1334.

5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (I) and this Court can and should enter final judgment on all claims for relief asserted herein.

6. Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.

## III.

## THE PARTIES

7. At all relevant times herein, Plaintiff CKR Law, LLP was and is a limited liability partnership formed and existing under and by virtue of the laws of California, maintaining its principal place of business in the City, County and State of New York.

8. Defendant Mark Elias Crone, the debtor in the Case, is an individual, and on information and belief, Plaintiff alleges that Crone is a resident of Los Angeles, California. Defendant purports to be a capable and qualified securities lawyer and became affiliated with CKR Law in order to, and based on his representations to CKR Law in 2014 that he was then able and qualified to, provide quality securities law related legal services to and on behalf of CKR Law's clients.

## IV.

## GENERAL ALLEGATIONS

9. Plaintiff CKR Law is a global law firm. Beginning in February 2014, and continuing through no later than April 26, 2016, Defendant was a member and equity owner of CKR Law. At all relevant times herein, the equity ownership of CKR Law was split evenly among Defendant, Scott Kline and Mr. Jeffrey Rinde ("Rinde"). Scott Kline severed his partnership and affiliation with Plaintiff and its partners (Rinde and Defendant) in December 2014.

10.     As a member of CKR Law, Defendant owed fiduciary duties to, inter alia, Plaintiff and to Rinde.

<u>Defendant Fraudulently Induces Plaintiff to Extend a Series of Loans</u>:

11.     Prior to joining CKR Law, but then unbeknownst to Plaintiff, Rinde or Scott Kline, Defendant was embroiled in various personal and professional disputes that limited and impaired his lawful ability to provide legal services to CKR Law and its clients, which disputes and impairments Defendant knowingly and intentionally failed to disclose to Plaintiff prior to joining CKR Law.

12.     After and as a result of CKR Law becoming aware of Defendant's professional impairments and inabilities resulting from, inter alia, ongoing legal proceedings and actions in which Defendant was embroiled, in order to mitigate the damage to Plaintiff resulting therefrom and to resolve these previously concealed matters – and to enable Defendant to provide required support and assistance to CKR Law – during Defendant's tenure with the law firm, CKR Law and Rinde, an equal partner in CKR Law, made a series of loans and advances to Defendant and for Defendant's benefit to, among other things, defray defense costs and other expenses in the face of mounting legal proceedings and actions.

13.     In order to induce CKR Law to loan such amounts, Defendant represented that the loans would enable him to resolve his then existing personal and professional disputes, and place him in a position in which he could focus on building CKR Law's client base, which induced Plaintiff to extend the loans. Defendant's representations were collateral to his independent obligation to repay the loans extended by Plaintiff.

14.     Plaintiff reasonably relied on Defendant's representations, and loaned and advanced to and for Defendant's benefit the sum of $320,000.

15.     Defendant made these representations with the preconceived and undisclosed intention of not performing. Defendant did not focus on his obligations to further the interests of CKR Law after receiving the benefit of the loans and advances, and instead engaged in minimal

4
COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF A DEBT

1 | marketing support and billed virtually no hours – knowing that the loans were to be repaid
2 | through distributions to which Defendant would be entitled resulting from work performed on
3 | behalf of CKR Law.  Additionally, Defendant lavishly spent Plaintiff's assets despite being
4 | repeatedly admonished by Plaintiff and Rinde. Instead, it appears that Defendant devoted his time
5 | to conjuring ways to injure Plaintiff.
6 |     16.    Defendant has repaid no portion of the loans made to him and for his benefit by
7 | Plaintiff.
8 | <u>Defendant's Misappropriation of Plaintiff's Property</u>:
9 |     17.    At the time Defendant departed CKR Law, the were substantial amounts of
10 | unbilled "work-in-process" and billed accounts receivable arising from Defendant's (or other
11 | attorneys') work to be and/or billed by Defendant to clients of Plaintiff.
12 |     18.    Plaintiff is informed and believes that Defendant subsequently billed and collected
13 | these amounts owing to Plaintiff, but failed to remit payment to Plaintiff.
14 |     19.    Plaintiff is further informed and believes that Defendant utilized a personal bank
15 | account he maintained in China to accept funds that were intended to be deposited into an escrow
16 | account in Plaintiff's name and then converted and embezzled such funds.  Part of this larcenous
17 | scheme was accomplished by Defendant instructing Plaintiff's personnel under his direct
18 | supervision and control cease forwarding bank statements that would have alerted Plaintiff to
19 | Defendant's thefts.
20 |     20.    In addition to the embezzlement, larceny and misappropriation by Defendant of
21 | Plaintiff's property as described above, Defendant also removed and retained Plaintiff's personal
22 | property from Plaintiff's corporate apartment where Defendant resided, including computers and
23 | other items of significant value.
24 | <u>Defendant Steals Stock Certificate 1091</u>:
25 |     21.    On occasion, Plaintiff (or its designee) receives a grant of equity in exchange for
26 | providing legal or other services.

27
28

5

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF A DEBT

22. Primarily because of certain historic, ongoing, and prospective legal and regulatory issues, of which Defendant was the subject (these issues are unrelated to Plaintiff), the owners and members of CKR Law agreed that an entity the partners owned and known as CKR Global Advisors, Inc., a Nevada corporation ("Global Advisors"), would be used as a vehicle through which certain investment and advisory consulting services would be rendered and performed on behalf of clients and prospective clients of CKR Law.

23. At all relevant times herein, Rinde was and remains the President and a director of Global Advisors, and owns fifty-percent (50%) of the equity of Global Advisors.

24. In 2015, one of CKR Law's clients caused 100,000 shares of common stock of Akoustis Technologies, Inc. ("Akoustis") to be issued to Plaintiff's "designee" in partial payment for some of the services rendered by Plaintiff. Said shares were evidenced by Akoustis share certificate no. 1091 ("Certificate 1091"). At the direction and designation of Plaintiff, Certificate 1091 was issued to Global Advisors, and was thereafter maintained in Plaintiff's safe.

25. The present value of the stock shares represented by Certificate 1091 is approximately $1,000,000.

26. In a scheme to wrongfully convert the ownership rights of Certificate 1091, and deprive Plaintiff, Rinde and Global Advisors of their respective rights in and to the stock shares, during the period of August through September, 2015, and again in April 2016, Defendant willfully and maliciously caused a series of false and fraudulent statements and submissions to be filed surreptitiously with the Secretary of State of the State of Nevada. These filings, falsely certified as true and accurate by Defendant under penalty of perjury, purported to (i) change the name of Global Advisors to "Ascendant Global Advisors, Inc." ("Ascendant"); and (ii) remove Rinde as a director and officer of Global Advisors, and establish Crone as Ascendant's President and sole director.

27. In furtherance of Defendant's willful and malicious scheme, while Rinde was traveling outside of the United States on CKR Law related business, in March, 2016 Defendant

unlawfully and deceptively purloined, and took wrongful possession of, Certificate 1091, with the intent of causing Certificate 1091 to be reissued in the name of Ascendant, enabling Defendant to sell the stock shares and steal the proceeds.

28.  Once Defendant's larcenous efforts were discovered, in June 2016, Plaintiff and others sued Defendant in the Supreme Court of the State of New York in and for the County of New York and sought and obtained an injunction preventing Defendant's sale, transfer or encumbrance of said shares of Stock. At plaintiff's request the designated transfer agent issued a "stop transfer order," blocking any transfer of Certificate 1091.

29.  Subsequent to the commencement of that litigation, Defendant purported to transfer his rights in said shares, and physical possession of Certificate 1091, to his ex-wife.

## FIRST CLAIM FOR RELIEF

(Nondischargeable Debt Under 11 U.S.C. § 523(a)(2)(A))

30.  Plaintiff repeats, realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 29 above, as though fully set forth herein.

31.  Defendant obtained the use and benefit of $320,000 in funds from Plaintiff by failing to disclose his serious legal problems prior to joining CKR Law, knowing that the disclosure of such investigations would materially affect Plaintiff's decision to form a business relationship with Defendant, and by making false and misleading representations to Plaintiff, and promises to Plaintiff, with a malevolent preconceived and undisclosed intention of not performing. The representations and promises that Defendant would devote his time and energies to advance the interests of Plaintiff were intended to, and did, induce Plaintiff to extend the loans and advances, and were collateral to Defendant's obligations to repay the funds loaned by Plaintiff.

32.  Defendant's promises that the loans and advances would enable Defendant to resolve his then existing personal and professional disputes and place him in a position in which he could focus on building CKR Law's client base, were material to Plaintiff's decision to enter

7

COMPLAINT FOR DETERMINATION OF DISCHARGEABILITY OF A DEBT

1 | into the transactions.

2 | 33. Defendant intended that Plaintiff rely on his promises and representations that Defendant would devote the necessary time and efforts to develop CKR Law's business, and Plaintiff did reasonably rely thereon.

34. Defendant did not intend to perform on his representations and promises to Plaintiff, and did not perform.

35. Defendant has repaid no portion of the amounts loaned and advanced by Plaintiff in reasonable reliance on Defendant's promises and representations.

36. All or part of the debt owed to Plaintiff is non-dischargeable as it is a debt for money obtained by false pretenses, a false representation, or actual fraud within the meaning of Bankruptcy Code § 523(a)(2)(A).

## SECOND CLAIM FOR RELIEF

(Nondischargeable Debt Under 11 U.S.C. § 523(a)(4))

37. Plaintiff repeats, realleges and incorporates by this reference each and every allegation set forth in Paragraphs 1 through 29 and 30 through 36 above, as though fully set forth herein.

38. The above facts demonstrate that Defendant converted and embezzled Plaintiff's assets, including work-in-process, accounts receivable, escrow funds and personal property while acting in a fiduciary capacity. Said actions by defendant constitute larceny.

39. The above facts show that Defendant fraudulently and wrongfully removed Certificate 1091 from Plaintiff's safe while acting in a fiduciary capacity – with the intent to appropriate Certificate 1091 for himself – which constitutes larceny. Plaintiff has sustained substantial damages in an effort to recover the purloined assets stolen by Defendant.

40. As a result of Defendant's conduct, Plaintiff has suffered damages in a yet to be determined amount arising from the taking of money and personal assets from Plaintiff. Additionally, Plaintiff has been forced to file suit against Defendant and others, and will be forced

1 | to incur expenses litigating false and baseless claims brought by the Chapter 7 Trustee in the
2 | Case, and potential claims in favor of Global Advisors and its owners.

3 |     41.    All or part of the debt arising from Defendant's theft of Plaintiff's money and
4 | assets, and Certificate 1091, including the litigation arising from the foregoing, all in an amount
5 | not yet determined, is non-dischargeable as it is a debt for embezzlement or larceny within the
6 | meaning of Bankruptcy Code § 523(a)(4).

### THIRD CLAIM FOR RELIEF

(Nondischargeable Debt Under 11 U.S.C. § 523(a)(6))

9 |     42.    Plaintiff repeats, realleges and incorporates by this reference each and every
10 | allegation set forth in Paragraphs 1 through 29, 30 through 36 and 37 through 41 above, as though
11 | fully set forth herein.

12 |     43.    Plaintiff is the rightful owner of money and assets wrongfully taken by Defendant.

13 |     44.    Plaintiff has an equitable interest in Certificate 1091 for payment of legal and other
14 | services performed by Plaintiff on behalf of a client in return for issuance of Certificate 1091 and
15 | on account of the fees and expenses incurred to recover possession of such stock certificate.

16 |     45.    Plaintiff directed and designated that Certificate 1091 be issued to Global
17 | Advisors.

18 |     46.    Defendant's theft of various items belonging to Plaintiff, and Certificate 1091,
19 | were intended to deprive, and has actually deprived, Plaintiff of funds, including its right to
20 | payment upon sale of the stock shares, and has caused and resulted in willful and malicious injury
21 | to Plaintiff. The Defendant's willful intent to cause injury and harm to Plaintiff is evidenced by
22 | Defendant's embezzlement from Plaintiff, and the theft of Certificate 1091 from Plaintiff,
23 | encouraging Plaintiff's clients to file baseless claims against the law firm and the false statements
24 | in Defendant's bankruptcy schedules identifying Plaintiff as a co-obligor of certain of
25 | Defendant's own liabilities, or, alternatively, the subjective knowledge of Defendant that harm to
26 | Plaintiff was substantially certain to occur, as demonstrated by knowledge or certainty of injury

by taking affirmative steps to convert Certificate 1091, including fraudulent filings made by Defendant with this Court in Defendant's bankruptcy schedules and with the Nevada Secretary of State to purportedly change the name of Global Advisors to Ascendant, and purporting to make himself the sole officer and director of Global Advisors, without requisite notice, authority, consent or approval for any such purported action.

47.  These wrongful acts and scheme necessarily caused injury to Plaintiff, including loss of value resulting from the money and property stolen by Defendant, and an inability to realize payment in satisfaction of legal services provided because Certificate 1091 remains in the possession of Defendant or individuals acting at the request or on behalf of Defendant, and expenses arising from the litigation concerning the foregoing, including false claims by the Chapter 7 Trustee challenging the validity of the debt owed to Plaintiff and to be satisfied though the sale of the stock shares.

48.  All or part of the debt owed to Plaintiff arising from the foregoing allegations is non-dischargeable as it is a debt for willful and malicious injury by the Defendant to Plaintiff or its property, within the meaning of Bankruptcy Code § 523(a)(6).

## **PRAYER**

WHEREFORE, Plaintiff-Creditors respectfully request that this Court enter a judgment determining that the debts described herein of the Defendant to Plaintiff are non-dischargeable under Bankruptcy Code §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6), and granting Plaintiff such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DATED: June 12, 2017    FRIEDMAN LAW GROUP, P.C.

By: /s/ Michael Sobkowiak
MICHAEL SOBKOWIAK, ESQ.
Attorneys for Plaintiffs CKR Law, LLP